[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This action was commenced by the plaintiff Diane Wolf by complaint dated October 25, 1993 seeking a legal separation and ancillary relief. On November 2, 1993 the defendant Kurt Wolf appeared by counsel and filed an answer and cross complaint claiming a legal separation as well as ancillary relief. The parties subsequently amended their respective claims, both seeking a dissolution of the marriage. On January 26, 1994 this action was claimed to the family relations limited contested list, and the matter was scheduled for trial and heard by the court on November 4, 1994. Based on the evidence adduced at the hearing the court makes the following findings:
The parties were married on November 8, 1975 at Windber, Pennsylvania. The wife's birth name is Diane Shaefer. CT Page 12156
The plaintiff resided continuously in the State of Connecticut twelve months preceding the filing of the complaint.
The marriage of the parties has broken down irretrievably with no prospects of reconciliation.
The parties have one minor child issue of the marriage, Rachel E. Wolf, born March 20, 1983. No other children have been born to the plaintiff since the date of the marriage.
Neither of the parties is receiving aid from the State of Connecticut or from any municipality.
The court has jurisdiction over the marriage and over the parties, and all statutory stays have expired.
The plaintiff, who is forty one years of age, has a high school education as well as subsequent attendance at Airline school. For a number of years she has been employed by Hooker and Holcolm, an actuarial and benefit consultant firm located in West Hartford. At present she occupies the position of administrative, assistant, earning approximately seven hundred and two ($702.00) dollars a week.
While the plaintiff lost weight and suffered depression as a result of stress associated with the failure of the marriage, she presently enjoys good health.
The defendant is a detective with the Hartford Police Department, his employer throughout the marriage.
During the course of the marriage both parties held outside employment and bore mutual responsibility for the family's household and financial responsibilities. The plaintiff worked up to a few days before Rachel's birth, and returned to work within weeks of her birth. During a substantial portion of the parties marriage subsequent to Rachel's birth, the parties shared the activities and responsibilities of her care.
The parties are both loving parents, each sensitive to Rachel's needs and capable of her care. The parties have agreed that they should share Rachel's custody and that her primary residence should be with her mother subject to substantial access by her father as will be recited infra. CT Page 12157
For most of the years of the parties' marriage their marital relationship was not remarkable. Although their life's pace was hectic, particularly while the defendant worked evenings and the plaintiff worked days, they enjoyed a comfortable life style including periodic vacations supported by their joint incomes. It is evident from the testimony of both parties that the defendant's police work was, from time to time, dangerous to him occasioning understandable stress to both parties.
In the later years of the marriage the plaintiff became involved in civic activities to include the parent teacher organization, girl scouts and her church. While the defendant expressed some dissatisfaction at trial with the time these activities took the plaintiff from the home, there is no credible evidence that the participation of the plaintiff in these, activities was corrosive to the marital relationship.
The defendant expressed some dissatisfaction at trial with the parties intimate life during the marriage. The court is not of the impression that this was a manifest issue during most of the marital years. The court believes that the defendant's concerns in this regard became accentuated in the latter months of 1992 once he had become romantically involved with another woman.
In the summer of 1992 the defendant began a sexually intimate relationship with a married woman for whom, at trial, he professed his love. Similarly, the defendant's paramour, who testified at trial, acknowledged sexual intimacies with the defendant and professed her love for him. She testified that a marital dissolution action relating to her marriage is currently pending in the Hartford Judicial District Superior Court.
While the court believes that the defendant was for years a faithful, hard working and supportive husband and parent, the court believes, in light of the evidence, that his relationship with his paramour was the precipitating factor and the primary cause for the dissolution of this marriage. In the latter months of 1992 the parties relationship deteriorated with little communication between the parties culminating in their eventual separation in July of 1993 when the defendant moved from the family residence.
It is clear from the evidence, and both parties agree, that the marriage has broken down irretrievably with no hope for CT Page 12158 reconciliation and should be dissolved.
The plaintiff and Rachel presently reside at 145 Countryside Drive, Rocky Hill, a single family dwelling owned jointly by the parties. The parties have stipulated that the property has a fair market value of two hundred twenty five thousand ($225,000) dollars, an amount supported by an appraisal of the property, obtained at a cost of two hundred and seventy five ($275.00) dollars. The mortgage balance, as of October 1994, was $75,229. The monthly mortgage payment, including principal, interest and tax escrow is approximately $1000. While the parties have a dispute as to the distribution of assets they agree that the plaintiff should own the family residence.
The defendant is presently residing with a friend, Peter Darby, at 17 Catalpa Court in Avon where he pays $500 a month rent, shares the utilities and has his own telephone.
The parties have stipulated to the values of their respective retirement assets. The plaintiff, through her employment has retirement assets, including a 401(k) plan, a defined benefit pension plan, a targeted plan, and an expectancy of social security which, in the aggregate, have a present pre tax value of $87,000.
The defendant, as an employee of the Hartford Police Department, is a member of the Municipal Employees Retirement Fund vested in a pension with a present pre tax value of $291,000. The defendant does not participate in the social security program through his municipal government employment.
At present the defendant is a member of a group health insurance plan in which both parties and Rachel participate. Although there is health insurance available to the plaintiff through her employment, her premium cost for the minimum available coverage would be approximately $1000 per year while it would cost her approximately $3000 a year to secure health coverage for herself comparable to the coverage she has enjoyed through her husband's plan.
The defendant currently has an account at the Hartford Police Federal Credit Union with an approximate balance of three thousand two hundred ($3200.00) dollars. During the hearing the defendant indicated his intention to transfer this account, pursuant to the Uniform Gifts to Minors Act, to Rachel. CT Page 12159
The defendant has two policies of insurance through his employment, an accidental death or dismemberment policy with a death benefit of $50,000 and another life policy with a death benefit of $150,000 payable if he is killed in the line of duty. While the parties appear to have used separate credit cards during the marriage, there are some credit cards in both names. Both parties claimed at trial that some of the credit card debt shown on their respective financial affidavits was incurred during the time the parties lived together for household and general family needs. The plaintiff seeks an order that the defendant be required to pay a portion of this debt shown on her affidavit.
At the time of the final hearing the defendant was paying the plaintiff, by way of pendente lite order, the sum of $150 a week in child support and $60 a week as alimony in addition to his coverage of the plaintiff and Rachel on his employment provided health insurance. At trial the parties stipulated that the amount of weekly child support indicated by application of the present Child Support Guidelines is one hundred and thirty ($130.00) a week. The plaintiff, however, seeks the higher sum of one hundred fifty ($150.00) dollars a week claiming there is a basis for deviation from the guidelines. The parties have stipulated that payments for child support need not be by immediate wage execution but shall be made by the defendant with the imposition by the court of a contingent wage execution.
During the pendency of this action the plaintiff has incurred, legal fees and costs in the total amount of eight thousand six hundred and thirty nine ($8639.00) dollars, which amount includes fees of seven thousand eight hundred ninety six ($7896.00) dollars based on an hourly rate of one hundred forty ($140.00) dollars, a rate which the defendant stipulated at trial to be reasonable. Included in the plaintiff's costs in the real estate appraisal fee. The plaintiff seeks an order that the defendant be required to pay, her fees and costs associated with this action.
The parties join in a request that the court waive the requirement that they participate in the Parenting Education Program, a request which the court believes is reasonable in light of the parties history of parenting and manifest awareness of Rachel's needs. CT Page 12160
Based on the evidence adduced at trial and in light of criteria set forth in statutory and decisional law, the court makes the following orders:
1. The marriage of the parties is dissolved based on its irretrievable breakdown with no hopes for reconciliation and the parties shall hereinafter be single and unmarried. The plaintiff's birth name of Diane Shaefer is restored to her.
2. The parties shall share joint custody of their minor daughter Rachel whose primary residence shall be with the plaintiff mother The defendant father and Rachel shall have liberal access to one another to specifically include every other weekend and a mid week visitation. The parties shall alternate the major holidays of Thanksgiving, Christmas Day, New Years Day, Easter, Memorial Day, the Fourth of July, Labor Day, Good Friday, President's Day, Columbus Day and Veterans Day. If a holiday falls on a Monday the parent who has access to Rachel during the weekend shall be entitled to remain with her until Monday evening at 5 p. m. The plaintiff shall be entitled to be with Rachel on Mother's Day; reciprocally, the defendant shall be entitled to be with Rachel on Father's Day. Subject to Rachel's availability and desires, the parties shall alternate Rachel's birthdays. During Rachel's summer vacation each of the parties shall be entitled to be with Rachel for two uninterrupted weeks. To effectuate this provision, the parties shall provide each other with notice of the weeks they intend to be with Rachel by May 1st of each year. In addition to the summer weeks, each party shall be entitled to an equal share of Rachel's school break time during the school year and shall notify each other at least thirty days in advance of any such holiday time of their respective desires regarding time with Rachel during these school holidays. In determining the date or dates on which the parties shall exercise their respective entitlements to be with Rachel the parties shall be sensitive to Rachel's desires, needs and availability as well as their own. For purposes of communications regarding Rachel each party shall provide the other with his and her phone number at home as well as at any intended vacation place. Each shall be entitled to reasonable telephone access to Rachel.
3. The defendant shall pay the plaintiff child support in the amount of one hundred and thirty ($130.00) a week due and payable by Friday of each week until such time as Rachel becomes nineteen or earlier graduates from high school and in conformity with the provisions of Public Act 94-61. There shall be a contingent wage CT Page 12161 execution in place to secure payment of this order. These payments shall be made by the defendant directly to the plaintiff.
4. The defendant shall maintain Rachel as an insured on his employment-related health care insurance and shall not reduce the quality or character of insurance she presently enjoys so long as health insurance is available to him through his employer. The parties shall each be responsible for one half of all deductibles for any health care and shall each pay one half of all unreimbursed medical, dental, psychological, orthodontic, optical, surgical, hospital, psychiatric, nursing, and prescriptive expenses incurred on behalf of Rachel during her minority or during any such extended period as they may be made liable. The provisions of Connecticut General Statute 46b-84(c) shall apply to this order. The signature of the plaintiff shall constitute a valid authorization to the insurer for purposes of processing an insurance reimbursement payment to the provider of the medical services. Neither parent shall prevent or interfere with the timely processing of any insurance reimbursement claim and the insured parent shall promptly pay to the other parent any insurance reimbursement for the services of a health care provider paid by the other. For purposes of enforcement of this part, the plaintiff shall be responsible for providing the insurer with a certified copy of the order of dissolution.
5. The defendant shall maintain his currently existing life insurance policies in an aggregate amount of one hundred and fifty thousand ($150,000) dollars for the exclusive benefit of Rachel during her minority. He shall do so by maintaining the one policy with a death benefit of fifty thousand ($50,000) dollars with Rachel as the beneficiary, and one hundred thousand ($100,000) dollars of the death benefit available to him on his other policy in which there is a total death benefit of one hundred fifty thousand ($150,000) dollars. The defendant shall provide written proof to the plaintiff by July 1st of each year of his compliance with this order.
6. The plaintiff shall be entitled to claim Rachel as a dependency exemption for Federal and State income taxation purposes in even numbered years; reciprocally the defendant shall be entitled to claim Rachel in odd numbered years. The defendant shall only be entitled to claim Rachel if he is current on all support, health care, life and health insurance, and alimony orders entered herein through December 31st of the year for which CT Page 12162 he seeks the exemption. Both parties shall execute any forms or documents necessary to effectuate this order.
7. The defendant shall pay the plaintiff as alimony for her support the sum of one hundred ($100.00) a week for a period of six hundred and twenty four weeks from the date of this dissolution due and payable on Friday of each week. Neither the term nor the amount of alimony shall be subject to modification for any reason, including the plaintiff's remarriage, except that it shall terminate upon the death of the plaintiff should she die before the expiration of the term.
8. The defendant shall quit claim to the plaintiff all of his right, title and interest in and to the parties jointly held property located at 145 Countryside Drive, Rocky Hill, Connecticut. The plaintiff shall assume and pay the mortgage payable thereon and shall hold the defendant harmless with respect to the mortgage.
9. Each party shall be entitled to sole ownership of the retirement assets each has free from any claims of the other and each shall execute any documents required to effectuate this order. This order shall not, however, prevent a court of competent jurisdiction from granting, an attachment, execution, garnishment, or other similar interest in the defendant's pension plan the plaintiff may seek in the future once the pension is in an in-pay status for the purpose of achieving compliance with the court's alimony and or child support orders entered hereon.
10. Based on the defendant's representations concerning his account at the Hartford Police Credit Union the court enters no order concerning that account except that in the event the defendant has not transferred this account in accordance with his representations within thirty days of this decision, the account shall be divided equally between the parties.
11. The parties shall each pay one half of the real estate appraisers fee of two hundred and seventy five ($275.00) dollars. In the event one party has already paid this bill the other party shall reimburse the paying party one half the total within thirty days of this decision.
12. The defendant shall contribute the sum of thirty six hundred ($3600) dollars to the plaintiff toward her counsel fees at the rate of twelve hundred ($1200) dollars a month commencing on CT Page 12163 January 15, 1995 with each successive installment due on the fifteenth day of each succeeding month.
13. With the exception of the specific orders made herein, each party shall be responsible for the liabilities shown on his and her financial affidavits and each shall hold the other harmless therefrom.
14. Unless specifically noted to the contrary, all documents and notices required in order to effectuate the orders made herein shall be executed and forwarded to the proper parties within thirty days herein.
15. Counsel for the plaintiff shall prepare the judgement herein.
In entering these orders the court has carefully considered applicable decisional law as well as those statutes set forth in Chapter 815j of the Connecticut General Statutes with specific regard to the criteria set forth in C.G.S. 46b-62, 46b-81,46b-82, and 46b-84 as well as the Child Support Guidelines.
Bishop, J.